UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

BRIAN K. VELTEN,

Defendant.

_____

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges as follows:

## I. INTRODUCTION

1. From no later than July 2009 through at least September 2012, Defendant Brian K. Velten, an unregistered investment adviser, opened accounts for his clients and engaged in a scheme to defraud at least three of them by (a) misappropriating a total of approximately $171,000 from the clients' accounts, (b) making false claims about his ability to generate large profits trading stocks for the clients, and (c) trading stocks on margin without client authorization.

2. From January 2000 until November 2007, Velten was a registered representative associated with various broker-dealers, and Velten knew his clients because they or their relatives had invested in annuities through Velten. Beginning in about 2009, Velten promised his clients large profits if they would invest their annuity funds in the stock market. For those clients who agreed to invest, Velten would open an account at Fidelity Brokerage Services, LLC, and the clients would transfer funds from their annuities into the account, to which Velten had

access through Fidelity's website.  Velten then converted to his own use a substantial portion of his clients' funds and engaged in margin trading without his clients' knowledge.

3.  By engaging in this conduct, Velten violated, and unless enjoined is reasonably likely to continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) and (2).

4.  The Commission respectfully requests that the Court enter: (a) a permanent injunction restraining and enjoining Velten from violating the federal securities laws; (b) an order directing Velten to pay disgorgement with prejudgment interest; and (c) an order directing Velten to pay civil money penalties

## II.  DEFENDANT

5.  Velten, 44, currently resides in Miami, Florida.  During the relevant time period, Velten, for compensation, engaged in the business of directly advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.  Velten was therefore an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

## III.  JURISDICTION AND VENUE

6.  The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act , 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa; and Sections 209(d) and 214 of the Advisers Act, 15 U.S.C. §§ 80b-9(d) and 80b-14.

7. The Court has personal jurisdiction over Velten, and venue is proper in the Southern District of Florida, because Velten is an inhabitant of, transacts business in, and resides in this District.

8. In connection with the conduct alleged in this Complaint, Velten, directly and indirectly, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails.

## IV. VELTEN'S FRAUDULENT ACTS

### Client 1

9. Client 1 was a 68-year-old Wisconsin resident whose family had invested in annuities through Velten.

10. In approximately July 2009, Velten falsely represented to Client 1 that he could generate a one-year profit of $80,000 for Client 1 on an investment of approximately $100,000. Client 1 agreed to invest with Velten. Client 1 and Velten did not have an agreement as to how Velten would be compensated.

11. In July 2009, Velten opened a Fidelity account online for Client 1, who transferred approximately $107,000 into the Fidelity account. In the account application, Velten listed (a) his own address as the mailing address, and (b) an email he controlled as the contact email. Velten also obtained the username and PIN information for Client 1's account, which enabled Velten to access the account through Fidelity's website.

12. After opening the account, Velten instructed Client 1 to fill out a form requesting that Fidelity issue checks for the account. Velten kept the checkbook and, at his direction, Client 1 signed some of the blank checks and provided them to Velten.

3

13.   On September 10, 2009, without authority from Client 1, Velten negotiated a check drawn against Client 1's account in the amount of $11,000 and kept the funds for his own use.

14.   Between December 24, 2009 and February 1, 2010, without authority from Client 1, Velten used a debit card issued by Fidelity to withdraw a total of $1,900 from Client 1's account at ATM machines in the Miami, Florida area.

15.   On January 13, 2010, Velten sold approximately $101,000 of securities in Client 1's account.

16.   On January 15, 2010, without authority from Client 1, Velten negotiated a check drawn against Client 1's account in the amount of $100,000 and kept the funds for his own use.

17.   During the time Client 1's account was open, Velten provided Client 1 with checks totaling $4,900, which Velten falsely represented as Client 1's total trading profits.

**Client 2**

18.   Client 2 was an 85-year-old Florida resident.  Prior to January 2010, Client 2 had been a client of Velten's and had invested in annuities though him.

19.   In or before January 2010, at Velten's recommendation, Client 2 agreed to liquidate her annuity and transfer funds to Fidelity for Velten to manage.  Velten and Client 2 did not have an agreement as to how Velten would be compensated.

20.   In January 2010, Velten opened a Fidelity account online for Client 2, who transferred $79,525 into the Fidelity account from her annuity.  In the account application, Velten listed an email he controlled as the contact email, and he requested that monthly statements and trade confirmations be delivered electronically.  Velten also obtained the username and PIN information for Client 2's account.

4

21.    In January 2010, Velten filled out a margin application online for Client 2 without Client 2's knowledge or consent. On the application, Velten overstated Client 2's annual income and net worth. Velten proceeded to trade stocks on margin in the account without Client 2's knowledge. By buying on "margin," Velten was causing Client 2 to borrow money from Fidelity to purchase additional securities. Trading on margin involves increased risk and interest charges on the borrowed funds.

22.    After opening the account, Velten instructed Client 2 to obtain checks from Fidelity for the account.

23.    Between March 7, 2011 and July 25, 2011, without authority from Client 2, Velten negotiated three checks drawn against Client 2's account in the total amount of $18,500 and kept the funds for his own use.

24.    In early 2012, Client 2's accountant discovered the payments to Velten and the margin trading, and Client 2 closed the Fidelity account.

**Client 3**

25.    Client 3 was a 92-year-old Florida resident. Prior to August 2011, Velten managed funds for Client 3 that were held in annuities.

26.    In August 2011, at Velten's recommendation, Client 3 opened an account at Fidelity and deposited into the account approximately $190,000 in funds from Client 3's annuity. Velten and Client 3 did not have an agreement as to how Velten would be compensated.

27.    In August 2011, Velten filled out a margin application online for Client 3 without Client 3's consent or authorization. Velten traded stocks in Client 3's account on margin, running up a debit balance as high as $176,000.

28.    After opening the account, Velten instructed Client 3 to obtain checks from Fidelity for Client 3's account.

29.    Between August 29, 2011 and April 19, 2012, without Client 3's authority, Velten negotiated three checks drawn against Client 3's account in the total amount of $39,000 and kept the funds for his own use.

30.    In May 2012, Velten filled out online an options trading application for Client 3's account, falsely representing that Client 3's investment objective was "most aggressive" and that Client 3 had ten years of experience in options trading.

31.    In June 2012, Fidelity discovered Velten's trading in Client 3's account and blocked access to the account.

32.    On three occasions in June and August 2012, Velten drove Client 3 to a Fidelity branch office in Tampa, Florida to have Client 3 sign papers authorizing Velten to trade in the account.

33.    At various times, Velten attempted to gain access to Client 3's account by calling Fidelity using fake names and/or by claiming to be Client 3's relative.  Some of those phone calls originated from Velten's cell phone number.

## V.  CLAIMS FOR RELIEF

### COUNT I

### Velten Violated Section 17(a)(1) of the Securities Act

34.   The Commission adopts by reference Paragraphs 1 through 33 of this Complaint.

35.   From no later than July 2009 through at least September 2012, Velten, directly and indirectly, by use of any means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully, or recklessly employed devices, schemes, or artifices to defraud.

36.   By reason of the foregoing, Velten directly or indirectly violated and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### COUNT II

### Velten Violated Sections 17(a)(2) and 17(a)(3) of the Securities Act

37.   The Commission adopts by reference Paragraphs 1 through 33 of this Complaint.

38.   From no later than July 2009 through at least September 2012, Velten directly and indirectly, by use of any means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, has been: (a) obtaining money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they are made, not misleading; or (b) engaging in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

7

39.   By reason of the foregoing, Velten directly or indirectly violated and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a).

## COUNT III

### Velten Violated Section 10(b) of the Exchange Act and Rule 10b-5

40.   The Commission adopts by reference Paragraphs 1 through 33 of this Complaint.

41.   From no later than July 2009 through at least September 2012, Velten, directly and indirectly, by use of any means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated as a fraud upon any person in connection with the sale of any security.

42.   By reason of the foregoing, Velten directly or indirectly violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.

## COUNT IV

### Velten Violated Sections 206(1) and 206(2) of the Advisers Act

43.   The Commission adopts by reference Paragraphs 1 through 33 of this Complaint.

44.   From no later than July 2009 through at least September 2012, Velten, while acting as an investment adviser, directly or indirectly, by use of the mails or any means and instrumentalities of interstate commerce, (a) with requisite scienter employed devices, schemes,

8

and artifices to defraud clients; and (b) engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon clients and prospective clients.

45.     By reason of the foregoing, Velten directly or indirectly violated and, unless enjoined, is reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and (2).

## VI.  **RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests the Court:

### Declaratory Relief

Declare, determine and find that Velten committed the violations of the federal securities laws alleged in this complaint.

### Permanent Injunction

Issue a Permanent Injunction, restraining and enjoining Velten, his agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, and Sections 206(1) and 206(2) of the Advisers Act.

### Disgorgement

Issue an Order directing Velten to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this complaint.

## Penalty

Issue an Order directing Velten to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 217 of the Advisers Act, 15 U.S.C. § 80b-17.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

September 26, 2013                         Respectfully submitted,

                                  By:     _____
                                          Andrew O. Schiff, Lead Counsel
                                          Senior Trial Counsel
                                          S.D. Fla. Bar No. A5501900
                                          Direct Dial: (305) 982-6390
                                          Facsimile (305) 536-4154
                                          E-mail: schiffa@sec.gov

                                          Laura R. Smith
                                          Senior Counsel
                                          California Bar No. 205159
                                          Direct Dial: (305) 982-6387
                                          E-mail: smithla@sec.gov

                                          Attorneys for Plaintiff
                                          **Securities and Exchange Commission**
                                          801 Brickell Avenue, Suite 1800
                                          Miami, FL 33131